## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **21 CR 703-2** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **DARREN SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Darren Smith and Andrew Lee were indicted by the United States of America in connection with the claimed payment of money by Mr. Smith to Mr. Lee, who was employed by the United States Department of Veterans Affairs. In part the indictment alleges that:

> 3. It was part of the scheme that ... Andrew Lee solicited and received concealed kickbacks from defendant Darren Smith in exchange for using his position at the VA to place orders for durable medical equipment from Company A totaling at least approximately $2,788,763 and to fraudulently cause the VA to overpay Company A for the equipment in the amount of at least approximately $1,381,285.

> 4. It was further part of the scheme that in exchange for concealed kickbacks from defendant Darren Smith, defendant Andrew Lee placed orders with Company A for unnecessary and more costly monthly rentals of durable medical equipment, despite instructions by VA physicians to purchase the equipment so that the VA would pay Company A more money for the equipment.

 Mr. Lee will be a primary witness for the government in the case against Mr. Smith.

According to the docket, Mr. Lee was served with a subpoena *deuces tecum* by service on his lawyer at the latter's email address on April 4, 2022 by Private Detective, Sergio Sorritelli. [Dkt. #35-1]. The subpoena bore a return date of May 3, 2022. It is not denied that the subpoena was, in fact, served upon his counsel on April 4, 2022. [*See* Dkt. #41 at 1]. Under the express language of

Rule 17(c)(2) of the Federal Rules of Criminal Procedure, the burden is on the party resisting a subpoena to "promptly" file an appropriate motion – either directly or through his attorney – demonstrating that "compliance would be unreasonable or oppressive." [*See also* Dkt. #39 at 2](Emphasis supplied). *United States v. Debolt*, 2010 WL 4281699 at *3 (N.D.W.Va. 2010). *See generally United States v. Nixon*, 418 U.S. 683 (1974). Yet, neither Mr. Lee nor his counsel took any action regarding the subpoena. Thus, on June 15, 2022, Mr. Smith's lawyer filed a Motion to Compel compliance with the subpoena. [Dkt. 35; 35-1]. The Motion contended that since no motion to quash was ever filed by Mr. Lee – let alone "promptly" as required by Rule 17(c)(2) – there had been a waiver of any objections to the subpoena. [Dkt. 39 at 9, n. *ii*].

Under the way in which the Clerk's Office in this District operates, *see* Local Rule 5.5; Amended General Order 20-0035, a Certificate of Service is not even required when all parties are e-filers – as Mr. Lee's counsel in this case is. Nonetheless, almost everyone routinely includes certificates of service that list the intended recipients. Assuming the normal procedures had been followed in this case, counsel would have been served by the clerk's office with the Motion. In any event, Judge Kendall's Order of June 21, 2022 [Dkt. #37] understandably said that it appeared from the notice filed with Mr. Smith's Motion to Compel that Mr. Lee's counsel – who was not named – apparently was not served with a copy of that Motion. Out of an abundance of caution and fairness, she thus understandably ordered that a copy of the Motion be served on "counsel for Mr. Lee." In any event, this resulted in a six day "loss" of time between the filing of the two motions and had nothing to do with the prior two and a half months during which Mr. Lee's counsel took no action despite having been served with the subpoena by email. [Dkt. #35-1].

2

Thus, on June 21, 2022, Mr. Smith's counsel re-filed what was captioned Amended Motion to Compel Compliance With Subpoena [Dkt. #39] and named Messrs. Charonis and Levitt on the Certificate of Service. [Dkt. #39 at 10]. The Amended Motion, like its predecessor, argued that Mr. Lee had waived any objection to the subpoena by failing to have "promptly" filed an appropriate motion as *required* by the Federal Rules of Criminal Procedure. [Dkt. 39 at 9, n. *ii*].

Only then did Mr. Lee's counsel take any action, filing what was titled "Motion to Quash." [Dkt. #41]. In a footnote, Mr. Lee's counsel also requested that the "Motion To Quash" be allowed to serve as a Response to Mr. Smith's Amended Motion To Compel. [Dkt. 41 at 1, note 1]. Rule 17(c)(2)'s mandatory requirement of promptness was not mentioned, even though two and a half had passed between the date that Mr. Lee's counsel had first been served by email with the subpoena and the date of Mr. Lee's "Motion To Quash Subpoena." [Dkt. #35-1; Dkt. 41]. No claim was ever made by Mr. Lee's counsel that it was not until he received the "Amended Motion To Compel Compliance With A Subpoena" [Dkt. 39] that he had knowledge of the subpoena.

Mr. Lee's "Motion to Quash," was not the prompt motion mandated by Rule 17(c). Promptness is generally defined as without unreasonable delay, "performed readily or immediately or given without delay." *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 F. App'x 401, 407 (6th Cir. 2019); Webster's Third New International Dictionary, 1816 (2002) defines promptly as at once, immediately, quickly, in a prompt manner or given without delay. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1268 (D. Or. 2016). The Oxford English Dictionary, 815 (3rd ed. 2005) defines prompt as "exactly or punctually." The Oxford Thesaurus offers the

following synonyms: "punctually, without delay, quickly...." 655 (3rd ed. 2005).[1] It is not discretionary. *Washingtonian Publishing Co. v. Pearson*, 306 U.S. 30, 53 (1939). *See also Idaho Conservation League, Inc. v. Russell*, 946 F.2d 717, 720 (9th Cir.1991); *S. Fifth Towers, LLC v. Aspen Insurance, U.K., Ltd.*, 763 F.App'x 401, 407 (6th Cir. 2019); *United States v. Khan*, 822 F.2d 451, 455 (4th Cir. 1987); *Idaho Conservation League v. Browner*, 968 F. Supp. 546, 549 (W.D. Wash. 1997); *Adaptec, Inc. v. Conner Peripherals, Inc*., 1995 WL 429245 at *3 (N.D.Cal. 1995). Nonetheless, it was only after some two and a half months had passed since the subpoena had been served on Mr. Lee's counsel without any response that Mr. Lee took any action regarding the subpoena by filing "Defendant's Motion To Quash Subpoena." [Dkt. #41]. This was anything but the prompt motion demanded by Rule 17(c)(2).

Mr. Smith's "Reply" [Dtk. #43] to Mr. Lee's untimely "Motion to Quash Subpoena" *again* stressed that Mr. Lee had disregarded the command of Rule 17(c) requiring objections to subpoenas to be "promptly made," and in essence contended that ignoring Rule 17(c)'s requirement of promptness was as pointless as it was impermissible. *Compare Founier v. Gonzalez*, 269 F.2d 26, 29 (1st Cir. 1959)(Rule 31(a) of the Federal Of Criminal Procedure could not be ignored even by the agreement of the parties). Even where time limits or temporal standards are imposed in a civil case they may not be ignored. *See, e.g., Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 28 (1st Cir. 2013)*; Johnson v. BAE Sys., Inc.*, 307 F.R.D. 220, 227 (D.D.C. 2013); *Gilliam v. Verizon Pennsylvania, Inc.*, 2014 WL 901296, at *4 (W.D. Pa. 2014)*.* It is at least as unavailing to ignore statutory commands as it is to ignore dispositive contrary authority. As the

---

[1] Promptly has been held to mean within 28 days at the latest. *Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 5073938, at *3 (N.D. Cal. 2020). *Abbott Laboratories v. Mead Johnson & Co.*, 976 F.2d 735 (7th Cir. 1992) defines prompt as within 60 days.

Seventh Circuit has warned, "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist...is pointless." *Hill v. Norfolk & Western Ry. Co.,* 814 F.2d 1192, 1198 (7th Cir.1987).

Throughout the range of the law, there are time limits imposed on parties at every stage of the case. Some are expressly defined and admit of no deviations. Others are more flexible. But in each instance, parties who do not pay heed to Shakespeare's injunction – "Defer no time delays have dangerous ends" Henry VI, Part I (1592) Act III, sc. ii 1.33 – imperil their own interests. In the setting of a civil case, the Seventh Circuit has warned that ignoring deadlines is the surest way to lose a case, *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994), and that "[l]awyers and litigants who decide to play by rules of their own invention will find the game cannot be won." *Golden Elevator,* 27 F.3d at 302. *See also Harris v. Owens-Corning Fiberglass Corp.,* 102 F.3d 1429, 1433 (7th Cir.1996). These precepts of caution are no less compelling in a criminal case where the mandatory provision of Rule (12)(c)(2) requires *promptness* in seeking judicial relief. Just as courts cannot ignore mandatory language in a statute even to accommodate special circumstances, *see Ross v. Blake*, __ U.S.__, 136 S. Ct. 1850, 1856 (2016); *United States v. Johnson*, 2020 WL 4719094, at *1 (S.D. Ga. 2020); *Jones v. Weibrecht*, 901 F.2d 17 (2nd Cir. 1990); *Delaware Credit Corp. (U.S.A.) v. Aronoff*, 1992 WL 170896 at *5 (W.D.N.Y. 1992), neither parties nor courts are at liberty to ignore a mandatory command of a Federal Rules of Criminal Procedure. *Cf.*, *Shlahtichman v. 1–800 Contacts, Inc.,* 615 F.3d 794, 802 (7th Cir.2010); *U.S. S.E.C. v. Chicago Convention Ctr., LLC* 961 F. Supp. 2d 905, 915 (N.D. Ill. 2013)(St. Eve, J.)(a court, "may not ignore the unambiguous language of the statute in order to further Congress's expressed purpose in enacting the statute.").

Since "the Federal Rules of Criminal Procedure have the force and effect of law just as a statute, the [mandatory] requirements promulgated in th[ose] rules must be obeyed." *United States v. Farias*, 836 F.3d 1315, 1330 (11th Cir. 2016). *See also United States v. Stewart*, 129 F.App'x 758, 764-65 (4th Cir. 2005)*; Fournier v. Gonzalez*, 269 F.2d 26, 29 (1st Cir. 1959); *United States v. Seigel*, 168 F.2d 143 146 (D.C.Cir. 1948). Since under Rule (17)(c)(2), promptness in bringing a motion is obligatory, not optional, a motion challenging a subpoena that is *not* "promptly" brought (like Mr. Lee's) must be denied. A district court is not at liberty to ignore the mandate of promptness in the Rule. *See United States v. Randolph,* 2015 WL 13333179, at *4 (W.D. Tenn. 2015). *Cf.*, *United States v. Mendoza*, 473 F.2d 697, 701 (5th Cir. 1973)("This action is not taken by reason of any constitutional mandate, but rather in our supervisory capacity to assure that the Federal Rules of Criminal Procedure are followed.").

Not surprisingly, Mr. Smith's opening brief in support of the Motion to Compel – which, it bears repeating, he was forced to file due to Mr. Lee's failure to have promptly filed a Motion to Quash – charged that Mr. Lee's noncompliance with Rule 17(c)(2) resulted in a waiver – an argument repeated in Mr. Smith's Reply brief. [Dkt. #39, n. ii; Dkt. 43 at 1- 2]. Yet, significantly, the waiver argument was ignored by Mr. Lee in his belated filing, titled "Motion to Quash." [Dkt. #41]. But, since titles are not determinative, *Jennings v. Auto Meter Products, Inc*., 495 F.3d 466, 472 (7th Cir. 2007), the title Mr. Lee chose could not eliminate or obscure his noncompliance with Rule 17(c)(2)'s requirement that a motion to quash a subpoena had to be "promptly" filed.[2]

---

[2]Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one. *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635 (7th Cir. 2011). Merely affixing the correct title to a motion does not mean that statutory requirements have been satisfied.

Mr. Lee's untimely "Motion to Quash" [Dkt. #41] ultimately seeks to justify its noncompliance with Rule 17(c)'s explicit requirement of promptness by contending that in the end, questions relating to a subpoena in a federal criminal case are within the "court's exclusive authority to permit production of materials prior to trial." Therefore, it is argued that it is for the court to make an independent inquiry into a subpoena's legality and enforceability since the authority to issue subpoenas "is derived from the court, itself." [Dkt. #41 at 9]. Unfortunately, "[g]eneral propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). By ignoring Rule 17(c)(2)'s requirement of promptness and substituting a court's necessarily varying sense of right and wrong as the determinant for deciding whether a subpoena should be enforced is contrary to the very basis on which courts function and is contrary to the very premise of our adversary system of criminal justice. *Herring v. New York*, 422 U.S. 853, 862 (1975). "To be sure, within that system... courts have substantial discretion in overseeing the functioning of a trial."*Id.* But that is a very different thing from having the discretionary authority to ignore statutory commands – a power which no judge enjoys, but which is the basis of Mr. Lee's argument.

To suggest that a judge has the discretion to ignore a *command* of the Federal Rules of Civil or Criminal Procedure in pursuit of his own necessarily idiosyncratic notion of what will best achieve "justice" in a particular case would usher in a regime of uncertainty and unpredictability in which justice and legitimacy would be measured, not by the commands of a statute or a Federal Rule of Criminal or Civil Procedure, but by the necessarily varying inclination of the particular judge to whom the case is assigned. That is a power which judges in this country do not enjoy. *Potomac Electric Co. v. Director OWCP,* 449 U.S. 268, 282–84 (2012).

Even a Chancellor in a civil case may not "succumb to the temptation to substitute his own 'incandescent conscience' for the will of the legislature." H. Shanks, The Art and Craft of Judging: The Decisions of Judge Learned Hand, 13 (1968). Neither equity jurisdiction nor jurisdiction under the Federal Rules of Criminal or Civil Procedure invests judges with an unfettered and necessarily varying and unpredictable discretion to decide cases in accordance with what ultimately is their private notions of justice. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 407 (1975). Adherence to the form of individualized decision-making would ultimately and improperly result in a regime of personal preference and unpredictability of decision. *See* Cardozo, The Nature of the Judicial Process, 33-34, 68-69 (1921). *Cf. Thryv, Inc v. Click-To-Call Techs., LP*, _ U.S. _, 140 S.Ct. 1367 (2020). But, just as judges are not at liberty to read clauses out of statutes, *United States v. Vega*, 438 F.3d 801, 803 (7th Cir. 2006), or to ignore plain statutory language, *CIA v. Sims*, 471 U.S. 159, 170 (1985), they are not at liberty to ignore Rule 17(c)(2)'s requirement of promptness and replace it with the judge's inherent and necessarily differing sense of right and wrong – the position advocated by Mr. Lee.

What the court said in *Seigel, supra,* serves as a response to Mr. Lee's argument that notwithstanding the command of Rule 17(c)(2), the court has some kind of inherent, undefined fount of authority that can be drawn upon in determining whether a given subpoena should be enforced:

> "Justice cannot be administered in chaos. Moreover, the administration of justice involves not only meticulous disposition of the conflicts in one particular case but the expeditious disposition of hundreds of cases. If the courts must stop to inquire where substantial justice on the merits lies every time a litigant refuses or fails to abide the reasonable and known rules of procedure, there will be no administration of justice. Litigants must be required to cooperate in the efficient disposition of their cases. We are told in substance that no injustice would result from ignoring the rules in this case. That may be, but it cannot justify the departure. Just as soon as [mandatory] rules of procedure are ignored in order to do substantial justice on the merits in a particular case, there are no rules. What is done in one case must be done

8

in all."

168 F.2d at 146. *See also Anwar v. Stephens*, 2017 WL 455416 at *1 (E.D.N.Y. 2017)("This Court

concurs with the majority and declines to 'ignore the mandatory language of Rule 68.'").

## CONCLUSION

The passage of approximately two and a half months between the date of the service of the

subpoena on Mr. Lee's counsel [Dkt. #35-1] and the date of Mr. Lee's "Motion to Quash" [*see* Dkt.

#41] is contrary to the promptness *required* by Rule 17(c)(2). What the court said in the civil case

of *Raymond v. Ameritech Corp.,* 442 F.3d 600, 606 (7th Cir. 2006) applies with equal force here:

"'We live in a world of deadlines. ... The practice of law is no exception. A good judge has a right

to assume that deadlines will be honored.'" *Id.* at 606. "Lawyers and litigants who decide to play

by rules of their own invention will find that the game cannot be won." *United States v. Golden*

*Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994).

The Motion To Compel Compliance With A Subpoena [Dkt. #39] is granted, and the

document titled "Motion To Quash Subpoena" [Dkt. #41] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 9/30/22

9